WILLIAM W. HUMPHREYS ET AL. *v.* JOHN M. McLACHLAN.

### [40 South. Rep., 151.]

ATTORNEY AND CLIENT. *Contingent fee. Contract. Validity.*

> A written contract for the professional services of a lawyer, his
> fee to be a contingent one, made by a client, thoroughly advised
> of his rights in the premises, will not be vacated on the ground
> that it was fraudulent or that the fee provided for was exorbi-
> tant, after the termination of the litigation by the acceptance,
> urged by the client, of an advantageous compromise.

FROM the chancery court of Lowndes county.

HON. JAMES F. McCOOL, Chancellor.

McLachlan, the appellee, was complainant in the court below;
Humphreys and another, the appellants, were defendants there.
The bill sought the cancellation of a contract made between the
parties for a contingent fee for legal services, on the ground that
the inexperience of the complainant and the circumstances
attendant upon the execution of the contract rendered the same
void, and on the further ground that the fee was exorbitant.
Other facts are stated in the opinion of the court.    The defend-
ants appealed to the supreme court from a decree in favor of the
complainant.

*William Baldwin,* for appellants.

That contingent fees with attorneys, for the recovery of
unknown rights of the client, are not only lawful, but commend-
able, goes without denial.    As said by Chief Justice Waite,
contingent fees, with attorneys, for the collection of claims, rest
upon the foundation of necessity, and to deny the right to make
them is to deny ability to secure competent legal service.    And
this rule of necessity applies alike to minors and adults; the
necessity is the same in both.

No one can read this record and not recognize that the facts
are the making of a contingent fee by McLachlan with his attor-

neys for the recovery of a claim about which he knew as much as they; that both were alike ignorant of the status of the claim— both were taking chances; that, under these conditions, the usual rule of contingent fee of one-half of the recovery was understood between the parties, can hardly admit of a doubt; nor can the righteousness or fairness of such a contract be denied under the facts of this case and its prospects, as it appeared to both parties in February, 1905, when the services were undertaken.

The very essence of all contingent agreements for fees by attorneys with clients is the uncertainty of results, and upon this they both take chances. It may result in a feast, and both should be happy; or it may result in a famine, and the client is out nothing, but his attorneys are out their time, their necessary outlay of money, their professional ability expended, and they must pocket the loss and go their way empty-handed.

*Newnan Cayce,* for appellee.

The court below rightly canceled the agreement for fees. It was made with flagrant disregard of the duties arising from the confidential relations of client and attorney—made with an inexperienced boy, who had just reached majority, who was still in legal contemplation a ward of the court; made in the absence of a guardian; made with one who had no friend with whom he could advise or take counsel. The attorneys held before the immature, inexperienced boy the glittering prospect of getting within a week the sum of ten thousand dollars, with prospects of getting more after awhile; all the boy had to do was to sign the agreement, and they would turn over the ten thousand dollars to him in about a week.

The unconscionable demand made by the attorneys under the proven facts of this case, and the extortionate amount they received thereunder, demonstrate gross imposition or undue influence, and in such cases courts of equity ought to interfere upon the statutory ground of fraud. These, with the confidential relations of the parties, necessarily furnish the most

vehement presumption of fraud.     1 Story's Eq. Jur. (10th ed.), sec. 246.

In cases in which confidential relations exist there is often to be found some intermixture of deceit, imposition, overreaching, unconscionable advantage, or other mark of direct or positive fraud; but the principle upon which courts of equity act in regard thereto stands independent of any such ingredient upon a motive of general public policy, and is designed in some degree as a protection to the parties against the effect of overweening confidence, and self-delusion, and the infirmities of a hasty and precipitate judgment.     The courts do not sit in judgment upon cases, as *custos morum,* enforcing strict rules of morality, but they do sit to enforce what has been not inaptly called a technical morality.     If confidence has been reposed, it must be faithfully acted upon and preserved from any intermixture of imposition; if influence is acquired, it must be kept free from the taint of self-interest and of cunning and overreaching bargains.

When such relations exist, courts of equity will not suffer one party standing in a situation of which he can avail himself against the other to derive advantage from that circumstance, for it is founded in a breach of confidence.     1 Story's Eq. Jur. (10th ed.), secs. 307, 308, 310, 312 (b), 313.

Transactions between attorney and client are presumptively invalid.     To uphold the transaction as against the client, the attorney must prove affirmatively by evidence its perfect fairness, adequacy, and equity.     No presumption of innocence, or improbability of wrongdoing, can be considered in the attorney's favor.     *Burnham* v. *Heselton,* 9 L. R. A., 90.

The burden of proof rests upon the attorney in every instance. 1 Greenl. on Evidence (13th ed.), note 4, p. 101; *Newman* v. *Payne,* 2 Vesey, 199; *Gibson* v. *Jeyes,* 3 Vesey, 270, *et seq.*

TRULY, J., delivered the opinion of the court.

We find ourselves unable to agree with the chancellor in his

conclusion that the contract between appellants and appellee should be annulled. The record fails to furnish the legal proof to overthrow the presumption of validity, and upon which to base a conclusion that the contract was procured under such circumstances of fraud or undue advantage as would authorize a court to order its cancellation. It is simply a familiar instance of client and attorneys entering into an agreement for a fee contingent upon recovery of a doubtful claim, the exact status or probable amount of which was at the date of the original contract unknown to either. Certain it is, in the instant case, that the attorneys had no greater information than had the client. The record contains no trace of any fraud practiced by W. W. Humphreys, the party with whom the contract was originally discussed, nor was there any concealment of the fact that the contract was entered into; on the contrary, the record discloses an amount of notoriety not usually incident to the making of such an agreement.

McLachlan, at the date of the execution of the written contract, was of full age. He was thoroughly advised of every step which had been theretofore taken in the effort to force a settlement of his grandfather's estate. He knew the difficulties which still confronted them, and was informed, according to his own statement, with absolute frankness of every legal contingency which might probably arise. Nor were the parties with whom he dealt occupying such a confidential relation as to require of them more than to deal with fairness toward him. He had himself approached and solicited W. W. Humphreys to represent him in the negotiations to enforce a settlement of an estate of unknown value in which he claimed an indefinite interest of uncertain extent, and had authorized the employment of assistant counsel. The other attorney was an absolute stranger to McLachlan, employed to render certain service, and from whom there were owing no duties save those of honesty and fair play. McLachlan does not claim that any misrepresenta-

tions were made to him; he does not pretend that there was any concealment of facts, material or otherwise; he does not contend that he was entrapped into making a disadvantageous contract. In truth, his sole complaint seems to be that the compensation which his attorneys received for their services seems now to him to be disproportionate to the amount of labor and trouble which the undertaking devolved upon them. And yet the written contract itself sets out the figures which it was hoped each contracting party would receive, and the record shows that the attorneys made a concession from the percentage to which they were entitled by the original understanding. The record further shows that the settlement was effected by a compromise in obedience to the insistent and specific direction of McLachlan himself, and that after the matter was finally closed he expressed himself as highly gratified at the settlement, and was profuse in thanks to his attorneys for the manner in which they had conducted the troublesome negotiations.

From a most careful inspection of this record, it occurs to us as highly probable that this litigation was instigated by the machinations and misrepresentations of one of the executors, who, acting from ulterior motives, apparently, sought to sow the seed of distrust and suspicion in the mind of McLachlan towards his counsel, and thereby divert attention from any further examination of the accounts of the estate. In no other way are we able to account for the sudden accession of interest in McLachlan and his affairs in a total stranger, who, until that time, had sought by every means in his power to coerce a full and absolute settlement before a complete investigation of the affairs of the estate had been made, to the disadvantage of McLachlan and to his own financial betterment. The contract having been fairly entered into, between parties of full contracting age, with full knowledge, without any element of fraud, oppression, undue influence, or concealment, we know no principle of law which

would authorize a court to annul it merely because it had proven advantageous and profitable to one of the contracting parties.

     *The decree is reversed, and the bill dismissed.*